Filed 10/10/13  P. v. Mendez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057294 |
| v. | (Super.Ct.No. RIF10005006) |
| ROMAN GARCIA MENDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elisabeth Sichel, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Roman Garcia Mendez, guilty of (1) three counts of making criminal threats (Pen. Code, § 422); (2) one count of deterring or resisting an executive officer; and (3) one count of cultivating marijuana (Health & Saf. Code, § 11358). As to one of the criminal threat counts, the jury found true the allegation that defendant personally used a firearm during the commission of the offense. (Pen. Code, § 12022.5, subd. (a).) The trial court sentenced defendant to prison for a term of four years, four months. Defendant contends the trial court erred by admitting defendant's non-Mirandized[1] statements concerning the location of a handgun.[2] We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.      CRIMES

Defendant lived in a house in Moreno Valley with his wife (Garcia) and her three children. Mario Lopez (Lopez) is one of Garcia's children. In July 2010, Lopez was 20 or 21 years old. On July 17, 2010, defendant and Garcia argued. Lopez felt defendant was verbally abusing Garcia. Lopez and defendant began arguing with one another. Defendant walked to the backyard, and Lopez followed. Defendant told Lopez to calm down, or defendant would "whoop [Lopez's] ass." Defendant

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

[2] In defendant's opening brief he raised a second issue. Defendant asserted the trial court violated his constitutional right of equal protection by imposing a booking fee without finding he had the ability to pay the fee. In defendant's reply brief, he concedes, due to a recent Supreme Court opinion, that the issue was forfeited because it was not raised at the trial court. (*People v. McCullough* (2013) 56 Cal.4th 589, 599.) Since defendant concedes the issue, we do not discuss it further.

reached into his pocket and pulled out a black semiautomatic handgun. Lopez felt scared; he called 911.

Riverside County Sheriff's deputies responded to Lopez's call. The deputies created a perimeter around the house. Defendant remained in the house and did not surrender for approximately 40 minutes or an hour. During the standoff, defendant threatened to shoot two deputies who were standing along the property's fence line.

After defendant surrendered, deputies searched the property and found marijuana plants, two rifles, a shotgun, and ammunition. The ammunition included gold or brass bullets for a nine-millimeter handgun. Deputies searched the property for a handgun, but did not find one. Deputy Grotefend asked defendant about "the location of the handgun." Defendant told the deputy he "threw the gun away." Defendant later told the deputy "he sold the handgun to his uncle."

B.     MOTION

During motions in limine, defense counsel asserted defendant's statement to Deputy Grotefend concerning the location of the handgun involved a custodial interrogation and *Miranda* issues. Deputy Grotefend testified at an Evidence Code section 402 hearing. Grotefend's testimony reflected: Lopez told the deputy he saw defendant with a handgun. Grotefend did not find a handgun when searching the property. The property was approximately half an acre with several sheds, piles of garbage, and "a rickety chain-link fence." Grotefend had patrolled the neighborhood for two and a half years. Grotefend knew there were children residing in the neighborhood. There were eight to 10 residences near defendant's house.

3

Grotefend spoke to defendant while defendant was handcuffed and "detained" "[i]n the back seat of a police car." Grotefend told defendant he "was looking for a handgun and that there was a possibility that a child could get that handgun." Grotefend asked defendant where the gun was located. Grotefend had not read defendant his *Miranda* rights. Defendant said he threw the gun away. Grotefend asked where the gun was thrown, then defendant said he sold the gun to his uncle years ago. A handgun belonging to defendant was never located.

The defense argued that Grotefend's questions "clearly" constituted a custodial interrogation. The trial court agreed, but framed the issue as whether Grotefend's questions fell within the public safety exception to the *Miranda* rules. Defense counsel asserted a thorough search of the property had been performed, so there was not a threat to public safety when Grotefend posed his questions. The trial court explained the deputies' inability to locate a handgun after an extensive search made Grotefend's question to defendant "more reasonable," because there was a possibility defendant "threw it somewhere out in the public area where they hadn't been able to find it, [so] the public risk [was] increased rather than decreased." The trial court concluded defendant's statements to Grotefend fell within the public safety exception to *Miranda*, so the statements could be admitted.

## DISCUSSION

Defendant contends the trial court erred by admitting his statements about the handgun because the statements violated defendant's Fifth Amendment constitutional right against self-incrimination. We disagree.

4

*Miranda* rulings are reviewed under the de novo standard. (*People v. Nelson* (2012) 53 Cal.4th 367, 380.) "In *New York v. Quarles* (1984) 467 U.S. 649, the United States Supreme Court enunciated a narrow 'public safety' exception to the prophylactic procedures mandated by *Miranda*. In *Quarles*, the police, after apprehending the defendant, were confronted with the immediate necessity of ascertaining the location of a gun that they had reason to believe the defendant had discarded in a supermarket. Before reciting the *Miranda* warnings, the police asked the defendant where the gun was located, and the defendant showed them. After the police retrieved the weapon, they advised the defendant of his *Miranda* rights. [The d]efendant claimed his statement directing the police to the gun, elicited prior to the *Miranda* warnings, was the product of a custodial interrogation violative of *Miranda* and therefore inadmissible. The trial court agreed and excluded the defendant's statement directing the police to the gun, also excluding the gun itself and subsequent statements as illegal fruits of the *Miranda* violation.

"On appeal, the United States Supreme Court reversed, holding that the rationale of *Miranda* does not require its application in circumstances where police officers must ask questions reasonably prompted by public safety. The court concluded that 'the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination' [citation], but held that the exception for such a situation must be circumscribed by the exigency that justifies the exception, thus authorizing the police to

5

engage in questioning only to the extent 'necessary to secure their own safety or the safety of the public . . . .' [Citation.]" (*People v. Sims* (1993) 5 Cal.4th 405, 450.)

The record reflects Lopez saw defendant with a handgun and handgun ammunition was found on the property. The rifles found on the property were loaded. Deputies located various firearms on the property, but did not find a handgun. The property had several sheds and trash piles. Grotefend did not believe it would be possible to search every shed and debris pile. The property was not secure, as there was only a "rickety" chain-link fence, which had holes in it.

Given that there were children in the area and multiple residences nearby, a missing handgun that had been seen just prior to the police standoff would pose a public safety concern, because defendant could have thrown it over his fence before the deputies established their perimeter. A child could have found the gun and harmed himself or others. Grotefend's questions pertained only to the location of the gun. When defendant said he sold the gun to his uncle, Grotefend did not ask further questions. Given the residential character of the neighborhood, the evidence that the gun had been seen just prior to the standoff, and the limited nature of the deputy's questions, we conclude defendant's statements fall within the public safety exception of the *Miranda* rules.

Defendant asserts the public safety exception is inapplicable because there was no evidence of the gun posing an immediate risk to public safety. Contrary to defendant's position, deputies could reasonably be concerned that defendant tossed the handgun over the fence line before the deputies established the perimeter around the

6

property.  Thus, the gun could have been lying in an area where a child would find it, while the police were still present.  Accordingly, we do not find defendant's argument to be persuasive, as there was an immediate threat to public safety.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                        J.

We concur:

McKINSTER
            Acting P. J.

RICHLI
                                                            J.

7